[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE
The plaintiff, commissioner of environmental protection, commenced the present enforcement action against the defendant, Wal*Mart Stores, Inc. The defendant now moves to strike the following counts from the substituted second amended complaint: one, two, three (paragraphs one through eight), four, five, six (paragraphs one through eight), and counts seven through sixteen.[1] The defendant claims that the commissioner's cause of action is legally insufficient because the Water Pollution Control Act, General Statutes § 22a-416 et seq., does not regulate storm water discharge, and the legislature's delegation of authority to the department of environmental protection pursuant to § 22a-430b violates Article II and Article III, § 1 of the Connecticut Constitution.
In counts one through sixteen of the complaint, the commissioner alleges that it issued a general permit for the discharge of storm water associated with commercial activity to the named facilities owned by the defendant.[2] The commissioner further avers that an agent of the department inspected these facilities and determined that each was operating in violation of its permit. The violations pertained to the alleged discharge of storm water from each of these facilities. As a result of the inspections, the commissioner commenced the present action alleging that the defendant's noncompliance with the issued permits constituted a violation of General Statutes § 22a-427 and §22a-430-3 (e) of the Connecticut agency regulations.
On December 17, 2001, the defendant filed a motion to strike all or part of counts one through sixteen. As required by Practice Book §10-42, the defendant filed a memorandum in support of its motion to strike, and the plaintiff filed a memorandum in opposition. The defendant also filed a reply memorandum in support of its motion to strike. CT Page 11558
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Brackets in original; internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998).
In support of its motion to strike, the defendant argues that the legislature did not provide guiding principles when it delegated authority to the commissioner to approve or deny permits pursuant to § 22a-430b. The defendant also argues that a plain reading of §22a-430 (a) demonstrates that the statute does not allow for the regulation of storm water. The commissioner responds that: (1) the motion to strike is an improper "speaking motion"; (2) the defendant is barred from contesting the validity of the permits because it failed to exhaust its administrative remedies; and (3) the delegation of authority under § 22a-430b is constitutional.[3]
 A Whether the Commissioner's Authority to Issue Permits Under General Statutes § 22a-430b Is Unconstitutional
The defendant argues that the § 22a-430b is unconstitutional because it does not provide any legislative standards to aid the commissioner in determining who would be required to obtain a discharge permit. The commissioner responds that the act encompasses the discharge of water, substance or material by any person or municipality into the waters of the state.
"A Legislature, in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law." State v.Stoddard, 126 Conn. 623, 628, 13 A.2d 586 (1940). "In order to render admissible such delegation of legislative power . . . it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform. . . . It is this CT Page 11559 rule that has been cited in this state as a canon of interpretation for virtually all delegations of legislative power." (Citation omitted; internal quotation marks omitted.) Bottone v. Westport, 209 Conn. 652,659, 553 A.2d 576 (1989).
It is well established that "legislative enactments carry with them a strong presumption of constitutionality. . . . Consequently, a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) Hammond v.Commissioner of Correction, 259 Conn. 855, 876, 792 A.2d 774 (2002).
The Connecticut Water Pollution Control Act serves as a "declaration of war against water pollution. . . . It embodies the concept that no one, whether individual, industry or community, has the right or privilege to render our water resources unusable by pollution." (Citation omitted; internal quotation marks omitted.) Starr v. Commissioner of EnvironmentalProtection, 226 Conn. 358, 376, 627 A.2d 1296 (1993); see also General Statutes § 22a-422. To accomplish these objectives, the act sets forth a comprehensive statutory scheme for the protection of the waters of the state. Because the act is a remedial statute; Starr v.Commissioner of Environmental Protection, supra, 226 Conn. 382; the legislature endowed the commissioner with broad authority to curb water pollution in the waters of the state. The legislature did, contrary to the defendant's assertions, provide sufficient guiding principles for the commissioner to enforce the act and, therefore, does not offend the separation of powers doctrine articulated in State v. Stoddard,126 Conn. 623, 13 A.2d 586 (1940).
Included among the many powers vested in the commissioner is the power to issue permits. General Statutes § 22a-424. Section 22a-430b states in relevant part that "[t]he commissioner of environmental protection may issue a general permit for the category or categories of discharges regulated pursuant to section 22a-430. . . ." General Statutes §22a-430 prohibits any person or municipality from initiating, creating, originating or maintaining any discharge of water, substance or material into the waters of the state.
The act is not without the requisite guiding principles to ensure uniform interpretation and application of the statute. Section 22a-430
(b) sets forth the basic processes and criteria for considering permit applications. Section 22a-430 (c) provides requirements for the contents of such permits. The act also instructs the commissioner to adopt regulations establishing uniform procedures, criteria and standards. § 22a-424 (l), § 22a-430 (b). The department of environmental CT Page 11560 protection has adopted detailed regulations. See Regs., Conn. State Agencies § 22a-430-3 and § 22a-430-4.
The court must assume that the legislature "intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional." (Internal quotation marks omitted.) Beccia v.Waterbury, 192 Conn. 127, 135, 470 A.2d 1202 (1984). Underscored is the fact that the statute is an environmental statute, remedial in nature and broad in purpose. The act provides the commissioner with an intelligible principle in which to carry out the duties delegated to the agency. Because the defendant has not met its difficult burden in showing that the Water Pollution Control Act is unconstitutional, the court declines to grant the motion to strike upon this basis.
 B Whether the Water Pollution Control Act Regulates Discharges of Storm Water
The defendant also argues that the Water Pollution Control Act does not regulate storm water runoff. The commissioner does not, however, directly respond to the defendant's proffered interpretation. Upon review of the statute, the court finds that the act does cover storm water discharge.
The proper disposition of the defendant's motion to strike requires the court to determine whether storm water runoff is within the purview of the Water Pollution Control Act, General Statutes § 22a-416 et seq. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case. . . . In seeking to determine that meaning, [the court looks] to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same subject matter." Salmon v. Dept. of Public Health AddictionServices, 259 Conn. 288, 299, 788 A.2d 1199 (2002).
The court is not aware of, nor have the parties provided, any case law discussing whether the act encompasses storm water runoff. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference." CT Page 11561 (Citations omitted; internal quotation marks omitted.) Starr v.Commissioner of Environmental Protection, 236 Conn. 722, 735-36,675 A.2d 430 (1996).
The act authorizes the commissioner to "issue, continue in effect, revoke, transfer, modify or deny permits, under such conditions as he may prescribe, for the discharge of any water, substance or material into the waters of the state. . . ." (Emphasis added.) General Statutes §22a-424 (i). A "discharge" is defined by the act as "the emission of any water, substance or material into the waters of the state, whether or not such substance causes pollution." General Statutes § 22a-423. Moreover, "[n]o person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner." § 22a-430 (a). Finally, the act expressly allows the commissioner to issue permits regulating "storm water discharges." General Statutes § 22a-430b (a) provides in relevant part that the commissioner "may regulate, within a geographical area . . . (2) storm water discharges. . . ." General Statutes § 22a-430b (a).
When read together, the above provisions clearly include storm water. The act incorporates water into the definition of "discharge." Section 22a-430b (a) specifically allows the commissioner to issue a permit regulating storm water. This interpretation comports with the remedial nature of the act as an environmental statute. Starr v. Commissioner ofEnvironmental Protection, supra, 226 Conn. 382.
The commissioner may initiate an enforcement action, under General Statutes § 22a-427, if any person or municipality causes pollution of any of the waters of the state in violation of any provision of the act.Keeney v. Old Saybrook, 237 Conn. 135, 158, 676 A.2d 795 (1996). To survive a challenge of legal insufficiency, the commissioner need only allege that the defendant was discharging storm water into the waters of the state without or in violation of a permit. Because the commissioner has properly alleged sufficient facts to support an enforcement action pursuant to § 22a-427, the court cannot grant the defendant's motion to strike upon the ground that the Water Pollution Control Act does not reach storm water runoff.
 CONCLUSION
For the foregoing reasons, the defendant's motion to strike is denied on all counts.
Hennessey, J. CT Page 11562